IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| FAITHE L. KIRBY,<br><br>        Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Civil No. 16-5159(RMB)<br><br>**OPINION** |

**BUMB**, United States District Judge:

THIS matter comes before the Court upon an appeal by Plaintiff Faithe L. Kirby (the "Plaintiff") of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for social security benefits for the period between October 24, 2010 and January 21, 2015. (Pl.'s Br. 1). For the reasons set forth below, the Court vacates the decision of the Administrative Law Judge ("ALJ") and remands for proceedings consistent with this Opinion.

**I.  Disability Defined**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states that:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)-(v). In Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999) the Third Circuit described the Commissioner's inquiry at each step of this analysis, as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that his impairments are "severe," he is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to his past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

Plummer, 186 F.3d at 428.

## II. Background

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.[1]

---

[1] Plaintiff's medical history is extensive, and the record in this case is voluminous. Because the Court decides this matter on a narrow basis, namely, an error by the ALJ in questioning a

3

A. Procedural History

Plaintiff applied for social security benefits on March 27, 2012, alleging that as of April 1, 2010, she was disabled due to Post-Traumatic Stress Disorder ("PTSD"), generalized anxiety disorder, panic disorder, shoulder joint degeneration, arthritis, acid reflux disease, and asthma. (Administrative Record "A.R." 216-19, 251). Plaintiff's claim was denied on August 28, 2012. (Id. at 141-45). On August 29, 2012, Plaintiff amended the alleged onset date of her disability to March 15, 2008. (Id. at 229). Reconsideration was denied on January 12, 2013. (Id. at 159-64).

On March 13, 2013, Plaintiff requested a hearing, (A.R. 165-69), and on June 5, 2014, a hearing was held before the Honorable Marguerite Toland (the "ALJ"). (Id. at 41-88). Plaintiff, who was represented by counsel, testified at the hearing. Marian Morocco, a vocational expert, also testified at the hearing. At the time of the hearing, Plaintiff again amended the alleged onset date to October 24, 2010. (Id. at 20, 44). On January 21, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. (Id. at 20-34). The Appeals Council denied Plaintiff's request for review on June 22, 2016, (A.R. 1-

---

vocational expert, a detailed recitation of such history is not necessary here.

4

6), at which time the ALJ's decision became the final determination of the Commissioner.

B. <u>Brief Factual Background</u>

Plaintiff was born on June 6, 1972, and was 40 years old on the alleged disability onset date. (<u>Id.</u> at 98). Her husband of twelve years, with whom Plaintiff had a volatile and abusive relationship, died on March 24, 2010 after battling drug and alcohol addiction. (<u>Id.</u> at 56-60). At some point during their relationship, Plaintiff also began abusing drugs, and she suffered with addiction issues for a time. (<u>Id.</u> at 56). Plaintiff has not worked since the date of her husband's death.

Plaintiff suffers from a number of impairments, both physical and mental, as is exemplified by her extensive record of emergency room trips and visits to her primary care physician, Dr. Gross. (<u>Id.</u> at 373-76, 307, 313-14, 378-84, 400, 504-05, 525-75). During the period between 2010 and 2013, Plaintiff sought treatment for, among other things: multiple left shoulder injuries, multiple apparent suicide attempts, generalized anxiety disorder, asthma, migraines, PTSD, depression, insomnia, and panic attacks. (<u>Id.</u>) She testified that beyond her mental inflictions, she suffers from neck, back, shoulder, and hip pain. (<u>Id.</u> at 66). She takes medication to help alleviate that pain. (A.R. 79).

According to her Adult Function Report, (Id. at 262-69), Plaintiff is now limited in her ability to "lift, function around others, dress, and bathe." (Id. at 263). She cannot sleep because "pain and insomnia keep [her] awake." (Id.) She can, however, still cook a full dinner every day, do some household chores, and shop for groceries. (Id. at 264-65). Plaintiff has not driven since her husband's death, and she can no longer ride horses, which was a hobby of hers prior to the alleged disability onset date. (Id. at 265-66). She also cannot lift more than twenty pounds or walk for more than 15 minutes without a ten minute break. (Id. at 267).

C. <u>Testimony of Vocational Expert</u>

At Plaintiff's hearing, the ALJ elicited testimony from an independent vocational expert, Marian R. Morocco. (Id. at 79). After reviewing Plaintiff's work history and listening to her testimony, Ms. Morocco testified to Plaintiff's ability to perform her past relevant work and alternative positions in light of her limitations. (Id.) With respect to Plaintiff's past relevant work, Ms. Morocco's testimony was limited to three jobs: typesetter, customer service representative, and scheduler. (Id.)

Ms. Morocco testified as follows regarding Plaintiff's ability to work in light of her limitations:

Q Okay . . . Ms. Morocco, please assume an individual having [Plaintiff's] age, education and the past work that you described. Please assume that this individual is limited to sedentary work. This individual can sit up to six hours per day but no more than one hour at a time and then would need to stand or shift positions every hour for four to five minutes while remaining on-task. This individual would be limited to low stress work . . . [and] can have no more than occasional interaction with the public and this individual can perform no more than occasional overhead reaching. Based on those limitations, could this individual perform any [of Plaintiff's] past work?

. . .

A Okay. Your Honor, the typesetter does not really require contact with the public, so that would be okay.

. . .

A The personnel and the – scheduling for personnel and the customer service would and so I would eliminate those two.

. . .

Q Okay. And are there other jobs that this individual could perform?

A At the sedentary exertional level, there would be a document preparer . . . There is also an addresser . . . [a]nd there is a final assembler.

. . .

A – another one, Judge . . . semiconductor bonder.

. . .

Q Okay. And what would be the employer's tolerance for being off-task at those jobs?

A No more – somewhere between 10 and 15%, Your Honor.

7

>    Q If the individual was off-task 5%, they could still
>    perform those jobs?
>
>    A Yes, Your Honor.
>
>    Q What if they are routinely off-task . . . 15 to 20%
>    of the day in addition to normal breaks. Could the
>    perform any of these jobs?
>
>    A No, Your Honor. That would preclude employment.
>
>    Q And what if the individual had frequent anxiety
>    attacks . . . and was off-task . . . <u>let's say an
>    additional half-hour every day due to just anxiety
>    symptoms in addition to normal breaks. Could they do
>    any of these jobs?</u>
>
>    A <u>No, Your Honor</u>.
>
>    Q And is your testimony consistent with the DOT?
>
>    A It is, with the exception of course of the off-task
>    which is based on my experience and the anxiety
>    attacks which of course adds to the off-task.

(Id. at 81-83)(emphasis added).

   D. ALJ's Decision

The ALJ applied the requisite five-step analysis, ultimately concluding that Plaintiff was not "disabled." At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of October 24, 2010. (Id. at 22). At Step 2, The ALJ found that Plaintiff had seven severe impairments: post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, panic disorder, depressive disorder, lumbar degenerative disc disease, obesity, and partial thickness tear of the left rotator cuff

8

with tendinitis.[2] (Id. at 22-23). Next, at the Third Step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (Id. at 23-24).

Based on her findings, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform

> [S]edentary work as defined in 20 CFR 404 .1567(a) and 416.967(a) except she can sit up to 6 hours per day, but no more than 1 hour at a time and then would need to stand or shift positions for 4-5 minutes every hour while remaining on task. She can perform no more than occasional overhead reaching. She is limited to low stress work, defined as routine work that would not involve a fast production rate pace. She can have no more than occasional and superficial interaction with the public, coworkers, and supervisors. <u>She would be off task 5% of the workday in addition to normal breaks</u>.

(Id. at 25-26)(emphasis added).

In making these findings, the ALJ looked to the Plaintiff's testimony, the Adult Function Report completed by Plaintiff, and the Plaintiff's medical record including the records from several hospital visits and the notes and reports of multiple

---

[2] The ALJ also addressed Plaintiff's asthma, hypertension, polysubstance abuse, and alcohol abuse. (A.R. 23). She found, however, that because each of these issues was being monitored and controlled by Plaintiff, they did not cause more than a minimal limitation on Plaintiff's ability to perform basic work activities. (Id.)

9

doctors.[3] (Id. at 26-32). The ALJ found that Plaintiff's allegations regarding the severity and intensity of her physical limitations were "not entirely credible" and not corroborated by the medical evidence, and that Plaintiff's allegations regarding the severity and intensity of her mental limitations were not supported by the objective medical evidence. (Id. at 27). The ALJ afforded little weight to the opinions of Dr. Gross, some weight to the opinions of Dr. Mintzer, and little weight to the opinions of the state agency psychological and medical consultants. (Id. at 31-32).

After performing the RFC assessment, the ALJ determined that Plaintiff was able to perform her past relevant work as a typesetter. (Id. at 33). This determination was based in large part on the testimony of Ms. Morocco, the vocational expert, that Plaintiff's work as a typesetter was sedentary semi-skilled work that an individual having Plaintiff's RFC could perform.

---

[3] Among other things, the ALJ specifically referenced: Plaintiff's numerous emergency room visits between 2010 and 2013; her intake at Newpoint Behavioral Health in October 2011; treatment notes prepared by Fred Gross, Psy.D. and medical reports completed by Dr. Gross in April 2012 and November 2012; psychological evaluations conducted in 2007, 2009, and 2012; a consultative examination performed by Lawrence Mintzer, Ph.D. in July 2014, and a separate medical source statement provided by Dr. Mintzer; reports provided by state agency medical and psychological consultants; the results of x-rays and an MRI performed on Plaintiff in 2012 and 2013; a consultative examination performed by Ken Klausman, M.D. in December 2012; and the treatment notes of Plaintiff's primary care physician, Joseph Hassman, D.O. (A.R. 26-32).

(Id. at 33-34, 79-87). The ALJ specifically referred to the vocational expert's testimony regarding an employer's tolerance for being off task. (Id. at 33).

As an alternative finding, the ALJ held that had the analysis reached Step 5, Plaintiff still would not have been found disabled, because there are other jobs existing in the national economy that she would be able to perform. (Id.) In reaching this alternative finding, the ALJ again relied on the vocational expert's testimony, specifically that based on her RFC, Plaintiff would be able to perform such positions as document preparer, addresser, and semi-conductor bonder. (Id. at 34). Thus, Plaintiff's application was denied. (Id.)

### III. Standard of Review

When reviewing an ALJ's final decision on disability benefits, courts are required to uphold the ALJ's factual determinations if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Dellapolla v. Comm'r of Soc. Sec., 662 Fed. Appx. 158, 160 (3d Cir. 2016) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971))).

If faced with conflicting evidence, however, the Commissioner "must adequately explain in the record his reason for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)); see also Guerrero v. Comm'r, No. 05-1709, 2006 WL 1722356, at *3 (D.N.J. June 19, 2006) ("The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it."), aff'd, 249 F. App'x 289 (3d Cir. 2007). As stated by the Third Circuit,

> [U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Ed. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)) (internal quotations omitted).

While the Commissioner's decision need not discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. Appx. 130, 133 (3d Cir. 2004), it must consider all pertinent medical and non-medical evidence and "explain [any] conciliations and rejections," Burnett v. Comm'r, 220 F.3d 112, 122 (3d Cir. 2000). See also Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001)("Although we do not expect the [administrative

law judge] to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law.").

In addition to the "substantial evidence" inquiry, the Court must also determine whether the ALJ applied the correct legal standards. See Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Id. at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

**IV. Analysis**

Plaintiff argues that the ALJ erred by (1) failing to present a complete hypothetical to the vocational expert; (2) assigning little weight to the opinion of Dr. Gross; (3) assigning little weight to portions of the opinions of Dr. Mintzer; and (4) improperly evaluating Plaintiff's credibility.

   A. The ALJ Erred in Posing a Hypothetical Vocational Profile to the Vocational Expert

Plaintiff argues that the ALJ failed to pose an appropriate hypothetical based upon Plaintiff's RFC to the vocational expert and, as a result, the determinations that Plaintiff could perform her past relevant work and other jobs that exist in significant numbers in the national economy are not supported by

substantial evidence. Because the Court agrees that the hypothetical posed to the vocational expert was incomplete, the Court will remand for further proceedings.

"The ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations." Rutherford v. Barnhart, 399 F .3d 546, 553-54 (3d Cir. 2005)(quoting Plummer, 186 F.3d at 431). "When an ALJ poses a hypothetical to a [vocational expert], that hypothetical must include all of the plaintiff's impairments that are supported by the record. If the hypothetical does not include all of the plaintiff's impairments, then it is deficient." Davis v. Comm'r of Soc. Sec., No. 11–3036, 2012 WL 2594354, at *11 (D.N.J. July 5, 2012) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). This rule applies to "every credible limitation established by the physical evidence." Plummer, 186 F.3d at 431. A vocational expert's response to an inaccurate or incomplete hypothetical cannot constitute substantial evidence. Chrupcala, 829 F.2d at 1276.

Here, the ALJ determined that Plaintiff had the RFC to perform sedentary work but, among other limitations, "would be off task 5% of the workday in addition to normal breaks." (A.R. 26). The ALJ asked the vocational expert about time off task. (Id. at 81-83). The Plaintiff, however, argues that the ALJ never asked the most important question: whether this limitation

would impact Plaintiff's past work or other available work. (Pl.'s Br. 21). The Court agrees that it is not clear that this limitation was properly included in the hypothetical.

The Court is concerned primarily with an apparent inconsistency in the ALJ's hypothetical. The ALJ did ask the vocational expert "[i]f the individual was off-task 5%, they could still perform these jobs?" to which the vocational expert responded "[y]es, Your Honor." (A.R. 82). However, almost immediately after that question, the ALJ asked "what if the individual . . . was off-task . . . an additional half hour every day due to just anxiety symptoms <u>in addition to normal breaks</u> . . . [c]ould they do any of those jobs?" (<u>Id.</u> at 83). As Plaintiff correctly notes, 5% of an eight-hour workday is 24 minutes. (Pl.'s Br. 22). The confusion here is exacerbated by the structure of the ALJ's questioning, in which she began by asking simply about time off task, and then adding the modifier "<u>in addition to normal breaks</u>" mid hypothetical. It is possible that the vocational expert's answers to these questions were consistent, and that this six minute difference between thirty minutes off task and 5% of the day off task is material. It is also possible, however, that what the ALJ was asking and what the vocational expert was answering were two different questions. As such, it is not clear that the ALJ conveyed all of Plaintiff's limitations, as required.

Defendant contends that "off-task" on its face refers to periods outside of normal breaks. (Def.'s Br. 14-15). The Court is not persuaded that the testimony in this case makes that clear. However, even if that were the case, it does not explain why a six-minute difference in "time off task" would have such a meaningful effect on the Plaintiff's ability to work. Because the ALJ's hypothetical was incomplete, or at least unclear, the vocational expert's response thereto is not substantial evidence. The Court is compelled to remand this matter so that the ALJ may present the vocational expert with a complete and accurate hypothetical upon which the expert may rely in rendering an opinion. On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation.

For the reasons set forth above, the Court is constrained to remand this matter to the ALJ for further consideration consistent with this Opinion and Order. Moreover, because remand is necessitated on this ground, the Court need not reach Plaintiff's remaining arguments.

An Order and Final Judgment consistent with this Opinion shall issue on this date.

s/ Renee Marie Bumb  
RENÉE MARIE BUMB  
United States District Judge

DATED: September 29, 2017